**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**CALIFORNIA MICRO DEVICES CORPORATION, Defendant.**

**No. Civ 93–1024–PHX–SMM.**

United States District Court, D. Arizona.

May 26, 1994.

Mary Joleen O'Neill, Ellen Sue Katz, Laura Todd Johnson, E.E.O.C., Phoenix, AZ, for plaintiff.

Anne L. Tiffen, Mariscal Weeks McIntyre & Friedlander, P.A., Phoenix, AZ, for defendant.

## MEMORANDUM OF DECISION AND ORDER

McNAMEE, District Judge.

### INTRODUCTION

In 1987, Defendant California Micro Devices [hereinafter "CMD"] took over a Tempe, Arizona facility previously owned and operated by GTE. GTE had employed William R. Spillane at the time of the takeover, and CMD kept Mr. Spillane on as an equipment maintenance technician. In March of 1989, Mr. Spillane left CMD to work for Motorola. He returned to CMD in November, 1989 after he was contacted by a former CMD co-worker who explained to Spillane that CMD needed someone with his skills.

At the time Spillane rejoined CMD, he told his supervisor that he thought he would work until August, 1991 when he might retire. After that conversation, Spillane did not have any further discussions about his retirement plans with his supervisor or anyone else in CMD management.

On April 15, 1991, Spillane was laid off by CMD. This layoff occurred approximately four months before the date that Spillane had indicated a year and a half earlier that he might retire. Spillane was sixty-two years of age when he was laid off. This suit arises out of Spillane's and the EEOC's contention that CMD laid off Spillane in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* [hereinafter "ADEA"].

### STANDARD OF REVIEW

Summary judgment is appropriate when the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c). "One of the principal purposes of the summary judgment rules is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ The disputed fact(s) must be material. *Id.* Substantive law determines which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The dispute must also be genuine. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510. There is no issue for trial unless there is sufficient evidence favoring the non-moving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2511. In a civil case, the question is:

whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512.

 The moving party who has the burden of proof on the issue at trial must establish all of the essential elements of the claim or defense for the court to find that the moving party is entitled to judgment as a matter of law. *Fontenot v. Upjohn,* 780 F.2d 1190, 1194 (5th Cir.1986); *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986); *cf. High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563 (9th Cir.1990) (discussing moving party's differing burdens when it bears burden of persuasion at trial, and when the non-moving party bears the burden of persuasion at trial). However, the moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Thus, summary judgment is proper if the non-moving party fails to make a showing sufficient to establish the existence of an essential element of his case on which it will bear the burden of proof at trial. *Id.*

 For the purposes of this motion, the Court construes all the facts in the light most favorable to the Plaintiff as the non-moving party. 10A Wright, Miller, & Kane, *Federal Practice & Procedure:* Civil 2d § 2727 (1983) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Calnetics Corp. v. Volkswagen of Am., Inc.,* 532 F.2d 674 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976)).

### DISCUSSION

There is some dispute as to the actual reason for Spillane's layoff. Defendant CMD asserts:

CMD claims that it selected Spillane for layoff because he was less versatile than other employees, which would not be discrimination as a matter of law. In contrast, the EEOC claims that CMD selected Spillane for layoff because he has expressed his plans to retire in a few months. For the purposes of this Motion, CMD has conceded the EEOC's claim and abandoned its articulated reason for selection.

Defendant's Reply Memorandum at 7–8. The Court interprets this to mean that CMD has adopted the position, at least for this Motion, that Spillane was selected for layoff because of a prior expressed intent to retire. It is against this backdrop that the Court begins its analysis of CMD's argument that Plaintiff's claims under the ADEA fail because selecting an employee for layoff because he expresses an intent to leave the company, even if by retirement, is not age discrimination as a matter of law.

### A. CMD's Argument based on *Hazen*

In support of its argument, Defendant asserts that while the ADEA forbids an employer to discriminate against any individual "because of such individual's age," 29 U.S.C. § 623(a)(1), the ADEA also provides that it is not unlawful to take any action prohibited under section 623(a) "where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). From this, CMD asserts that since Spillane's layoff was based upon his impending absence from the company due to retirement, and thus not based on his age, their decision to layoff Spillane falls within section 623(f)(1), and is therefore not age discrimination as a matter of law.

The primary case Defendant relies upon in support of its proposition that a layoff based on an employer's belief that an employee may soon retire is not age discrimination is *Hazen Paper Co. v. Biggins,* — U.S. —, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). An examination of *Hazen,* however, demonstrates that Defendant has overstated the holding of the case.

In *Hazen,* the employer fired Mr. Biggins when he was sixty-two years of age and within a few weeks of having his pension vest. Defendant argues that the Supreme Court reversed the judgment of the First Circuit Court of Appeals which upheld a jury verdict in Mr. Biggins' favor. The Supreme Court, however, vacated the Circuit Court's opinion and remanded the case for further

proceedings to determine whether there was sufficient evidence to support an ADEA violation. In so doing, the Supreme Court did not hold that the termination of Mr. Biggins was not a violation of ADEA, but rather determined the record before the Supreme Court was insufficient to determine the ultimate question. On remand, the First Circuit determined Mr. Biggins had met his burden, and affirmed the verdict in his favor on the ADEA claim. *See Biggins v. Hazen Paper Co.,* 1993 WL 406515 (1st Cir.1993).[1]

## B. The Current Status of Disparate Treatment ADEA Cases

 *Hazen* analyzed the disparate treatment theory that is available under the plain language of the ADEA.[2] *See Hazen,* — U.S. at ——, 113 S.Ct. at 1706. In a disparate treatment case, liability depends upon whether the plaintiff's age actually motivated the employer's decision. *Id.* "Whatever the employer's decision making process, a disparate treatment claim cannot succeed unless [age] actually played a role in that process and had a determinative influence on the outcome." *Id.* Hence, under the ADEA, an employer cannot rely on age as a proxy for an employee's characteristics, but rather mandates that employees be evaluated on their merits. *Id.*

The problem presented by *Hazen,* however, was not one of pure age discrimination based on "the sort animus motivating some other forms of discrimination." *Id.* Instead, the vesting of Mr. Biggins' pension was based on the number of years of his service to the company, not his age. Thus, an employee who had begun work with the company at age twenty-one would be vested in pension benefits after ten years of service. The termination of such a employee at age thirty-one, just a few weeks before the pension benefits were to vest, would not violate the ADEA.[3] On the other hand, a sixty-one

year old employee who is discharged after one year on the job might have a valid ADEA claim, while not implicating any pensions rights at all. The Supreme Court therefore reasoned that age and years of service were analytically distinct. As such, an employer could take into account one factor while ignoring the other. *Id.*

## C. *Hazen*'s Applicability to the Present Case

Given the facts in *Hazen,* the present case is factually distinguishable. *Hazen* made it clear that the ADEA does not prohibit employment decisions made "on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age." *Id.* at ——, 113 S.Ct. at 1705. *Hazen* did not, however, "preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older [might] thereby engage[ ] in age discrimination." *Id.* at ——, 113 S.Ct. at 1707.

It is undisputed that Mr. Spillane was sixty-two and the oldest employee in his department when he was discharged from CMD. His previously stated intent to retire was based upon his age, not his years of service at CMD. This case therefore presents issues that *Hazen* did not address. There are, however, Ninth Circuit opinions that are instructive on the present case.

## D. Retirement Status vs. Age Under the ADEA

 In *EEOC v. Borden's Inc.,* the Ninth Circuit held that employment decisions based on retirement status may be violative of the ADEA. *Borden,* 724 F.2d 1390, 1393–95 (9th Cir.1984), *overruled, in part, on other grounds by Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 109

1. The First Circuit's decision on remand also took into account the Supreme Court's subsequent decision in *St. Mary's Honor Center v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), discussed below in this Memorandum Opinion.

2. The Supreme Court has "never decided whether a disparate impact theory of liability" is also a

valid basis for a cognizable ADEA claim. *See Hazen,* — U.S. at ——, 113 S.Ct. at 1706.

3. Such a termination would, however, implicate the Employee Retirement Income Security Act ("ERISA"), codified as amended 29 U.S.C. §§ 1001 *et seq.,* just as the *Hazen* termination implicated ERISA. *See Hazen,* — U.S. at ——, 113 S.Ct. at 1707.

S.Ct. 2854, 106 L.Ed.2d 134 (1989).[4] In *Borden*, the defendant corporation closed its Phoenix, Arizona plant and laid off almost all of the employees. Most of the discharged employees received severance pay under the provisions of Borden's severance pay policy. The policy provided, though, that employees eligible for retirement were not entitled to severance pay. Eligibility for retirement came at age fifty-five and after ten years of service with Borden.

In the suit filed by the EEOC on behalf of fifteen Borden workers over the age of fifty-five, the plaintiffs alleged that Borden's policy of denying severance pay to employees eligible for retirement discriminated on the basis of age. In holding the policy violated the ADEA, the Ninth Circuit said:

> Borden ... argue[s] that the severance policy distinguished employees on the basis of their retirement status, and not solely because of age. But this fact does not suffice to defeat a claim of disparate treatment under the ADEA. We have twice held that an employer discriminates "because of" age whenever age is a "but for" cause of discrimination.

\* \* \* \* \* \*

> We hold that even though retireable employees were eligible for pension and insurance benefits, this fact is not a "reasonable factor other than age" justifying the denial of severance pay" [within the meaning of 29 U.S.C. § 623(f)(1) ].

*Id.* at 1393–94 (citations omitted).

The decision in *Borden* was reaffirmed in the recent case of *EEOC v. Local 350, Plumbers & Pipefitters*, 982 F.2d 1305 (9th Cir.1992), *amended & superseded*, 998 F.2d 641 (9th Cir.1992). In *Local 350*, the defendant union operated a hiring hall. It refused to allow a retired member to seek employment through the hall while the member received pension benefits. To retire, a union member had to be fifty-five years of age or older. The Ninth Circuit reversed the district court's grant of summary judgment in favor of the union and held that the union's policy violated the ADEA because the union impermissibly used retirement status as a proxy for age. *Local 350*, 998 F.2d at 646.[5]

> Under [the *Borden* ] analysis, Local 350's policy discriminates on the basis of age. On its face, it discriminates only against retired employees; however, only employees 55 or older are eligible to retire. There is thus a very close connection between age and the factor on which discrimination is based.

> Local 350 argues that the policy is not discriminatory because the "but for" cause of discrimination is not the retiree's age, but his voluntary decision to retire and remain retired. This argument is unavailing. First, as *Borden* suggests, we are unwilling to draw so fine a line when determining causation.

\* \* \* \* \* \*

> Thus, Local 350's policy violates Section 623(c)(2) because it refuses to refer certain employees for work on the basis of a factor very closely related to age.

*Id.* at 646.

The Court is aware that both the decision in *Borden* and the initial decision in *Local 350* were issued before the Supreme Court's ruling in *Hazen*. The amended *Local 350* decision, however, was issued after the Circuit Court was petitioned by the union for a rehearing based upon *Hazen*. The Ninth Circuit denied reconsideration of its denial of rehearing, stating "[w]e perceive no conflict between *Hazen* and our decision in this case." *Id.* at 648 n. 2. The Circuit Court cited *Hazen* for the proposition that factors closely related to age may form the basis of a valid ADEA claim if used as a proxy for age. *Id.*

---

**4.** Public Law 101–433 provides: "The Congress finds that, as a result of the decision of the Supreme Court in [*Betts* ], legislative action is necessary to restore the original congressional intent in passing and amended the ADEA." Thus, *Betts* has been superseded by statute. *See, e.g., EEOC v. Westinghouse Elec. Corp.*, 925 F.2d 619 (3d Cir.1991).

**5.** At this juncture, the Court notes that both *Borden* and *Local 350* refute Defendant's claim that unless a motivating factor is based upon an inaccurate or stigmatizing stereotype, then there can be no discrimination as a matter of law.

CMD attempts to distinguish *Borden* and *Local 350* by arguing that the present case does not deal with "some notion of theoretical retirement 'eligibility.'" Defendant's Reply Brief at 5. This begs the question. It is precisely due to Mr. Spillane's age that he had contemplated retirement in the first place. CMD states "the admitted rationale that CMD used to select Spillane—that it did not want to lay off someone else and then have to replace Spillane later anyway—would apply to any person planning to leave the company, regardless of that person's age." Defendant's Reply Brief at 7. CMD's attempt to diminish the role that Mr. Spillane's age may have played in CMD's decision-making process, however, presents an issue of fact that cannot be resolved on summary judgment.

### E. The Law Applied to the Present Case

In explaining what constitutes the factual basis for an ADEA claim, the Supreme Court stated:

> The employer may have relied upon a formal, facially discriminatory policy requiring adverse treatment of employees with that trait. Or the employer may have been motivated by the protected trait on an ad hoc, informal basis. Whatever the employer's decision-making process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process, and had a determinative influence on the outcome.

*Hazen*, — U.S. at ——, 113 S.Ct. at 1706. Whether Mr. Spillane's age "actually played a role ... and had a determinative influence on" CMD's decision to lay off Spillane is a genuine issue of material fact which precludes summary judgment on Plaintiff's ADEA claim. *Id.* A jury is entitled to hear the evidence and decide this question of fact for itself.

### F. Prima Facie Case

■ Because *Borden* and *Local 350* refute the Defendant's contention that even if the facts are as alleged by Plaintiff, then there is no age discrimination as a matter of law, the relevant inquiry then shifts to whether Plaintiff has produced sufficient evidence to support Mr. Spillane's claim for age discrimination. *See Hazen*, — U.S. at ——, 113 S.Ct. at 1707 (citing the Title VII framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as the governing framework for ADEA cases); *Cassino v. Reichhold Chem.*, 817 F.2d 1338, 1343 (9th Cir.1987) (adapting to ADEA claims the *McDonnell* test for determining race discrimination under Title VII), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988). The Court finds that the EEOC has met this burden.

■ The undisputed facts establish that Mr. Spillane was sixty-two and the oldest employee in his department when he was laid off. Mr. Spillane was performing his duties at least in a satisfactory manner, often receiving outstanding performance reviews. CMD laid him off while retaining younger employees with less or comparable qualifications than those possessed by Mr. Spillane. Plaintiff has therefore set forth sufficient facts to establish a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See, e.g., Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir.1993); *Douglas v. Anderson*, 656 F.2d 528, 532–33 (9th Cir.1981). Once a prima facie case of discrimination is established, the burden of production shifts to CMD as the Defendant to articulate a legitimate, non-discriminatory reason for its action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). The EEOC must then prove the articulated reason is pretextual either by showing that discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence. *Id.* at 256, 101 S.Ct. at 1095.

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the employer's proffered reasons will *permit* the trier of fact to infer the

ultimate fact of intentional discrimination, and ... upon such rejection, no additional proof of discrimination is *required.*

*St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (emphasis in original; internal quotations and citations omitted).

■ Defendant contends that CMD selected Spillane for layoff because a year and a half before the actual layoff, Mr. Spillane had expressed an intention to retire from CMD in what would have been four months after the time the layoff actually occurred. CMD explains that it was Spillane's impending absence, and not his age, that cause his selection for layoff. CMD argues that it made more sense to lay off Spillane, since they believed he was leaving CMD soon anyway, than to lay off someone else and then have to replace Spillane four months later.

Pursuant to *Borden* and *Local 350,* Plaintiff counters that CMD's action was impermissibly based on Mr. Spillane's age vis-a-vis his retirement status. They assert that no one ever confirmed with Mr. Spillane that he might retire despite the fact that his comment to that effect was made nearly a year and a half before the layoff. Thus, Plaintiff asserts, CMD acted on its assumption that, given Mr. Spillane's age, he would be retiring soon. Spillane further explains that if anyone had asked him about retirement, he would have explained that he did not plan to retire due to financial constraints retirement would have placed upon him at the time.

■ Given the parties' respective positions, there are genuine issues of material fact that must be decided by a finder of fact. Because a factfinder "is entitled to infer discrimination from [a] plaintiff's proof of a prima facie case and showing of pretext without anything more, there will always be a question for the factfinder ... [as to] whether the employer's explanation for its action is true. Such questions cannot be resolved on summary judgment." *Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir.1993). Defendant's Motion for Summary Judgment must therefore be denied.

*CONCLUSION AND ORDER*

For the reasons set forth above,

**IT IS ORDERED** that Defendant California Micro Devices Corporation's Motion for Summary Judgment is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the oral argument on Defendant's Motion for Summary Judgment previously scheduled for 2:00 p.m. on June 20, 1994 is hereby **VACATED.**